UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JOHAN A. VAN WEELDEN,<br><br>                      Plaintiff,<br><br>v.<br><br>1. EQUAL ENERGY LTD.,<br>2. DON KLAPKO,<br>3. MICHAEL DOYLE,<br>4. VICTOR DUSIK,<br>5. ROBERT WILKINSON,<br>6. KYLE TRAVIS,<br>7. LEE CANAAN,<br>8. MICHAEL COFFMAN,<br>9. PETROFLOW CANADA ACQUISITION CORP., and<br>10. PETROFLOW ENERGY CORPORATION,<br><br>                      Defendants. | Civil Action No. CIV-14-47-C |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Johan A. Van Weelden ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on personal knowledge, as follows:

**NATURE OF THE CASE**

1. This individual action arises out of the proposed merger (the "Merger") between Equal Energy Ltd. ("Equal Energy" or the "Company"), and Petroflow Energy Corporation ("Petroflow"), pursuant to which Petroflow plans to acquire all of the outstanding shares of Equal Energy in an all-cash transaction valued at approximately $230 million.

2. Under the terms of the Arrangement Agreement (the "Merger Agreement") executed on December 6, 2013, Petroflow, through its wholly owned subsidiary Petroflow

Canada Acquisition Corp. ("Merger Sub"), will acquire all of the outstanding shares of Equal Energy for $5.43 per share.

3. As alleged herein, the members of Equal Energy's board of directors (the "Board" or the "Director Defendants") have violated the federal securities laws by misrepresenting or omitting material information in proxy solicitation materials filed with the U.S. Securities and Exchange Commission (the "SEC").

4. On December 31, 2013, Equal Energy filed a Preliminary Schedule 14A Proxy Statement (the "Proxy Statement"). Notwithstanding the Board's statutory obligation to disclose any and all material information to shareholders concerning the Merger, the Proxy Statement misrepresents and omits material information that Equal Energy's shareholders need in order to make a fully informed decision in voting on the Merger.

5. Specifically, Defendants failed to disclose key information regarding (a) the financial analyses supporting the Merger consideration performed by Global Hunter Securities, LLC ("GHS"), the Board's financial advisor, (b) conflicts of interest affecting GHS, and (c) information concerning the process leading up to the announcement of the proposed Merger.

6. Without this information, Equal Energy shareholders will be unable to make a fully informed decision whether to vote for (or against) the proposed Merger. As a result of an uninformed vote—which impinges on the foundational corporate right of shareholder suffrage—the Company's shareholders stand to suffer irreparable harm.

7. Accordingly, Plaintiff, seeks to enjoin the proposed Merger unless and until Defendants remedy their violations.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act and

Rule 14a-9 promulgated thereunder and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

9. Venue is proper in this district because: (i) the conduct at issue took place and had an effect in this district; (ii) Equal Energy maintains its principal place of business in this District; (iii) one or more of the defendants either resides in or maintains executive offices in this District; (iv) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein occurred in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

10. Plaintiff is, and has been at all relevant times, the owner of shares of Equal Energy common stock.

11. Defendant Equal Energy (NYSE: EQU) is an exploration and production oil and gas company, incorporated in Alberta, Canada and headquartered at 4801 Gaillardia Pkwy, Suite 325, Oklahoma City, Oklahoma 73142.

12. Defendant Don Klapko has been Chief Executive Officer, President and a director of the Company since 2008.

13. Defendant Michael Doyle has been a director of the Company since 2007 and Chairman of the Board since May 13, 2013. Mr. Doyle is a member of the Board's Compensation Committee, Audit Committee and Governance and Nominating Committee.

14. Defendant Victor Dusik has been a director of the Company since 2008. Mr. Dusik is Chairman of the Board's Compensation Committee, and a member of the Audit Committee and Governance and Nominating Committee.

15. Defendant Robert Wilkinson has been a director of the Company since 2011. Mr. Wilkinson is a member of the Board's Audit Committee.

16. Defendant Kyle Travis has been a member of the Board since May 13, 2013. Mr. Travis serves as the Chairman of the Reserves and HSE Committee.

17. Defendant Lee Canaan has been a director of the Company since May 13, 2013.

18. Defendant Michael Coffman has been a director of the Company since May 13, 2013.

19. Defendant Petroflow is an exploration, development and production oil and gas company incorporated under Delaware law. Petroflow is a wholly owned subsidiary of TexOak Petro Holdings LLC.

20. Defendant Merger Sub is an Alberta, Canada corporation wholly owned by Petroflow that was created for the purpose of effectuating the Proposed Transaction.

21. The persons listed in paragraphs 12 through 20 are collectively referred to as the "Defendants." The persons listed in paragraphs 12 through 18 are collectively referred to as the "Director Defendants."

## SUBSTANTIVE ALLEGATIONS

*The Proposed Merger Between Equal Energy and Petroflow*

22. In a press release dated December 9, 2013, Equal Energy announced that it had entered into the Merger Agreement with Petroflow, pursuant to which Petroflow, through Merger Sub, agreed to acquire all of the outstanding shares of Equal Energy in an all-cash transaction worth approximately $230 million.

23. Under the terms of the parties' Merger Agreement, executed on December 6, 2013, Equal Energy shareholders will receive $5.43 for each of their shares of Company common stock.

24. The Merger is contingent upon, among other things, the approval of 66 $^2/_3$% of the outstanding shares of Equal Energy's common stock, as well as a simple majority of the outstanding shares of Equal Energy's common stock besides shares owned by Klapko.

25. In connection with the process leading up to the execution of the Merger Agreement, Equal Energy's Board retained GHS to act as its financial advisor.

### *The Proxy Statement Misrepresents and Omits Material Information Concerning the Merger*

26. On December 31, 2013, Equal Energy filed its Proxy Statement.

27. Notwithstanding the Board's obligation to disclose any and all material information concerning the Merger—which is necessary for the Company's shareholders to be able to cast an informed vote at the upcoming special meeting—Defendants failed to disclose key information regarding (a) the financial analyses supporting the Merger consideration performed by GHS, the Board's financial advisor, (b) conflicts of interest affecting GHS, and (c) information concerning the process leading up to the announcement of the proposed Merger.

#### *Equal Energy's Financial Forecasts*

28. Financial forecasts (sometimes referred to as projections) are among the most important information to be disclosed to shareholders, particularly where, as here, they are asked to consider whether to share in the continued upside of a company versus foregoing future returns and accepting a cash offer that undervalues the Company.

29. GHS used Equal Energy's financial forecasts for 2013 and 2014 in performing its *Selected Public Companies Analysis* and the *Implied Shareholder Rate of Return Analysis*.

5

30. Notwithstanding the materiality of these financial forecasts, the Proxy Statement fails to disclose the individual cash flow items that reconcile projected EBITDA to Net Cash Flow for the three periods presented. The Proxy Statement also fails to disclose the financial projections that provide the basis for the sensitivity analysis in the *Selected Public Companies Analysis* that used projected EBITDA values not represented in the financial forecasts provided in the Proxy at page 51.

31. The above-described forward-looking information is material because the disclosure of the financial forecasts allow shareholders to determine the value of the Company and its future business prospects and better understand the proposed sale to Petroflow. Without this information in the Proxy Statement the shareholders cannot cast an informed vote and could be misled about the Company's future business prospects and the validity of GHS's financial analysis.

*GHS's Financial Analyses*

32. GHS, acting as the Board's financial advisor, performed various financial analyses in support of its "fairness opinion" concerning the adequacy of the Merger consideration being offered to Equal Energy shareholders.

33. The Board, in turn, expressly cited GHS's purported fairness opinion, which was based on its financial calculations, as one of the reasons supporting its decision to enter into the Merger Agreement.

34. Shareholders are entitled to a fair summary of the analyses underlying an advisor's fairness opinion. However, the Proxy Statement inadequately discloses the underlying methodologies, key inputs, and multiples relied upon and observed by GHS, thereby preventing Equal Energy's shareholders from adequately and on an informed basis evaluating and

understanding GHS's financial analyses and, thus, the resulting fairness opinion.

35. The Proxy Statement fails to disclose the various financial modelling scenarios presented by GHS to the Special Committee on May 7, 2013 and the extensive financial modelling performed by GHS and Equal Energy with Company B in May 2013. The Proxy Statement also fails to disclose the internal valuations discussed with the Board on October 1, 2013.

36. With respect to GHS's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the basis for selecting only those transactions in excess of $250 million, which is material because the $250 million cutoff is greater than the value of the Petroflow/Equal Energy transaction. The Proxy Statement also fails to disclose the percentage of transactions that were cash offers compared to stock offers, which is important because the type of transaction can impact the premium paid.

37. With respect to GHS's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the basis for selecting companies with profitability in excess of 35%, which is important because that cutoff is greater than Equal Energy's profitability for the twelve month period ending September 30, 2013. The Proxy Statement also fails to disclose Equal Energy's leverage, which is important in determining whether GHS' analysis considered companies more or less leveraged than the Company. The Proxy Statement also fails to disclose whether the financial information utilized to calculate Equal Energy's projected EBITDA was based off September 9, 2013 or was updated, which is important because GHS reviewed historical financial data and reserve and production data of Equal for September 9, 2013. Finally, the analysis notes a sensitivity analysis for projected EBITDA but fails to disclose the assumptions used to determine that EBITDA would increase from the projections provided on page 51 of the

Proxy Statement. This is important because it may reflect information about the Company's future prospects that has not otherwise been disclosed to shareholders. GHS purports to establish a relative value for Equal Energy by considering metrics pertaining to other "comparable" companies, and shareholders are entitled to a fair summary of a financial advisor's work. Each of the material omissions described above renders the Proxy Statement false or misleading because it deprives shareholders of a fair summary of GHS's work and does not permit shareholders to fairly assess the validity of the analysis.

38. With respect to GHS's *Selected Asset Transaction Analysis*, the Proxy Statement fails to disclose the basis for not observing EV/EBITDA multiples as were examined in the *Selected Public Companies Analysis.* GHS purports to establish a relative value for Equal Energy based on previously announced asset transactions, and shareholders are entitled to a fair summary of a financial advisor's work. The material omission described above renders the Proxy Statement false or misleading because it deprives shareholders of a fair summary of GHS's work and does not permit shareholders to fairly assess the validity of the analysis.

39. With respect to GHS's *Implied Shareholder Rate of Return Analysis*, the Proxy Statement fails to disclose the methodology and assumptions utilized by GHS to calculate the terminal net asset value per share, which is important for shareholders to assess the validity of the analysis. The Proxy Statement also fails to disclose the production mix for Equal through 2013 for oil, gas and NGL utilized by GHS, which is also important for shareholders to assess the validity of the analysis. Finally, the Proxy Statement fails to disclose the basis for providing an equity rate of return range from 10% to 25% and whether GHS performed a cost of equity or weighted average cost of capital analysis utilizing the peer group identified in the *Selected Public Companies Analysis*. This information is important for shareholders to assess the validity of the

analysis. GHS purports to establish a relative value for Equal Energy based on the Company's projected financial results, and shareholders are entitled to a fair summary of a financial advisor's work. Each of the material omissions described above renders the Proxy Statement false or misleading because it deprives shareholders of a fair summary of GHS's work and does not permit shareholders to fairly assess the validity of the analysis.

*The Process Leading Up to the Execution of the Merger Agreement*

40. The Proxy Statement fails to disclose critical information relating to the process by which Equal Energy's management or the Board decided to pursue a strategic transaction. Each of the following omissions is material to shareholders because their omission does not permit shareholders to determine whether the Board and management adequately represented shareholders' interests during the negotiations process.

41. In particular, the Proxy Statement fails to disclose:

    (a) The identities of the three "independent" directors who made up the Special Committee formed in early 2013 to consider a strategic process and whether those directors were also part of the Special Committee that considered the strategic process that occurred in 2012;

    (b) The "certain other assets" purchased along with the Hunton property in 2006 for $246 million and whether the purchase was made in Canadian or US dollars;

    (c) How much of the Convertible Debentures (offered on February 9, 2011) were used to redeem the 8.0% convertible unsecured subordinated debentures and the amount redeemed using Equal's credit facility;

(d) The "certain material financial obligations" owed to Petroflow by Equal Energy as decided by the Bankruptcy Court in early March 2011;

(e) The value of the CDN$50 million offering in US dollars at that time;

(f) The identities of the members of the 2012 Special Committee;

(g) The number of strategic and financial parties contacted via email and contacted in person by Scotiabank as part of the 2012 strategic process;

(h) The timing of the bids received for the Hunton assets and other certain assets in Oklahoma;

(i) The basis for the number of bids increasing from nine to ten between August 22, 2012 and October 12, 2012;

(j) The amount of proposed consideration for the "superior offer" made for the Central Oklahoma assets and the party who evaluated the offer;

(k) The rationale for the Board's decision not to sell the Hunton assets as part of the 2012 strategic process;

(l) The relationship between the assets sold as part of the 2012 strategic process and the Hunton property, including the percentage of assets owned by the Company after completion of the 2012 strategic process and the value of such assets;

(m) The details of the proposal received by Company A on January 31, 2013;

(n) The duties, responsibilities and powers of the Special Committee formed to evaluate offers in 2013;

(o) Scotiabank's role after the March 25, 2013 announcement of Scotiabank's retention as a financial advisor, including any fees paid to Scotiabank in

relation to the 2013 strategic process, the fees earned by Scotiabank in relation to the 2012 strategic process and whether Scotiabank provided any services to Petroflow, TexOak Petro Holdings LLC or any affiliates or subsidiaries of either entity and, if so, the compensation earned for such services;

(p) The criteria for selecting the 12 potential interested parties contacted by GHS, the number of those parties that participated in the 2012 strategic process, the basis for not contacting more of the interested parties from the 2012 strategic process and the number of strategic and financial parties contacted as part of the 2013 strategic process;

(q) The terms of the revised offer made by Company A on April 23, 2013 and the basis for determining that the offer was "unacceptable;"

(r) The terms of the offer made by Company B on May 1, 2013 and the "certain aspects" that were not acceptable and those that were compelling;

(s) The two further alternatives to Equal Energy's counter-proposal identified by Company B;

(t) The go-forward scenarios and status of other interested parties as discussed by the Special Committee, management and GHS on June 1, 2013;

(u) The provisions of Company B's offer that were still unacceptable to Equal Energy;

(v) Whether Klapko was authorized by the Special Committee or the Board to discuss a transaction with the Chief Executive Officer for Company B;

(w) The "certain transaction structuring matters" that needed to be resolved quickly as Klapko advised the Chief Executive Officer on July 26, 2013;

(x) The basis for the Board indicating a need for a definitive agreement with Company B by August 31, 2013;

(y) The identity of the persons from Equal Energy who contacted Montclair on August 23, 2013 and August 28, 2013;

(z) The various interested parties with whom the Company had had "extensive, but non-conclusive discussions" as advised to Montclair, Petroflow and two other parties on August 28, 2013;

(aa) The terms of the amendment to the confidentiality agreement as discussed at the Special Committee meeting on September 10, 2013 and the amendment negotiated between Montclair and Equal Energy on September 20, 2013;

(bb) How the holders of the Convertible Debentures would be treated as per Petroflow's proposal of September 29, 2013 and the basis for determining that made Petroflow's offer superior to Montclair;s offer;

(cc) The basis for determining that Petroflow's proposal of October 3, 2013 was superior to Montclair's proposal, and whether and how the treatment of the Convertible Debenture holders influenced that decision;

(dd) The revisions the Board required to accept Petroflow's offer as discussed on October 4, 2013;

(ee) The identity of Petroflow's financial advisors and whether they provided any services for Equal Energy in the previous two years and if so, the compensation received for such services;

(ff) The summary of cash and working capital positions and anticipated capital costs for various go-forward operational scenarios as provided to Petroflow by Equal Energy and whether the go-forward operational scenarios were disclosed in the projections on page 51 of the Proxy Statement;

(gg) The outstanding business points discussed by the financial legal advisors for Petroflow and Equal Energy on November 26, 2013 and discussed by Klapko and the Chief Executive Officer of Petroflow on November 29, 2013;

(hh) The operational matters discussed by Klapko and Petroflow's Chief Executive Officer on December 3, 2013 and December 4, 2013; and

(ii) The basis for the Board indicating that it did not want to enter into a definitive agreement later than December 6, 2013.

42. This information is material because it tells the Company's shareholders whether the proposed Merger is, in fact, the result of a process designed to secure the highest price possible for Equal Energy and its shareholders.

*Conflicts of Interest Affecting GHS*

43. A financial advisor plays a crucial role in mergers and acquisitions, facilitating the mechanics of the sales process, providing expertise considering the suitability of combinations with certain parties, and ultimately rendering an opinion on the fairness of a deal.

44. It is, therefore, important to retain an advisor that is both technically qualified and not subject to any conflicts of interest. It is equally important that any potential conflicts of interest must be disclosed to a company's shareholders so that they can assess the credibility of the work and analyses performed by the financial advisor. Indeed, if the financial advisor has conflicting interests it may impact its judgment in rendering an unbiased fairness opinion. A Company's shareholders must be given the opportunity to carefully consider a financial advisor's proprietary financial interest in a proposed transaction in order to assess how much credence to give its analysis.

45. Here, the Proxy Statement omits material information concerning potential conflicts affecting GHS, which acted as the Board's financial advisor, including:

(a) Whether GHS has provided services in the past two years for Petroflow, TexOak Petro Holdings LLC or any affiliates or subsidiaries of either entity, and if so, the amount of compensation received for such services;

(b) Whether GHS has provided services in the past two years for Equal Energy and, if so, the amount of compensation received for such services; and

(c) Whether the Board was aware of how much money GHS has received and still stands to receive from Petroflow, TexOak Petro Holdings LLC or any affiliates or subsidiaries of either entity, in connection with any relationship, material or otherwise.

46. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Plaintiff will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of § 14(a) of the
Securities Exchange Act of 1934 and the SEC's Rule 14a-9**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement which fails to provide critical information regarding, among other things, the future value of the Company, the key inputs and assumptions of the financial analyses, potential conflicts of interest, and the background leading up to the Merger.

49. In so doing, the Defendants made untrue statements of fact and omitted to state material facts necessary to make the statements made not misleading. Each of the Director Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

50. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51. Specifically, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

52. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Merger. As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law.

## COUNT II

### Against the Director Defendants for Violations of §20(a) of the 1934 Act

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Director Defendants acted as controlling persons of Equal Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Equal Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Director Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Director Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. Projected financial information was reviewed by the Board periodically at meetings. The Proxy Statement at issue contains the unanimous recommendation of each of the Director Defendants to approve the Merger. They were, thus, directly involved in the making of this document.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Director Defendants were each involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Director Defendants reviewed and considered. The Director Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Director Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Director Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Director Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) enjoining, preliminarily and permanently, the Merger;

(B) in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(C) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(D) granting Plaintiff such further relief as the Court deems just and proper.

Dated: January 14, 2014                               Respectfully Submitted,

                                                      s/ Scott A. Graham
                                                      Scott A. Graham, OBA No. 19817
                                                      **THE FIRM ON BALTIMORE, PLLC**
                                                      1811 S. Baltimore Ave.
                                                      Tulsa, Oklahoma 74119
                                                      (918) 948-6171
                                                      (800) 460-3446
                                                      scott@lawtulsa.com

                                                      **Attorney for Plaintiff**

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Shane T. Rowley
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171